1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11  J.S.,                              Case No. 2:18-cv-02202-SHK
12                       Plaintiff,
13          v.                         OPINION AND ORDER
14  ANDREW M. SAUL, Commissioner of
    Social Security,
15
                         Defendant.
16
17
18          Plaintiff J.S.[1] ("Plaintiff") seeks judicial review of the final decision of the
19  Commissioner of the Social Security Administration ("Commissioner,"
20  "Agency," or "Defendant") denying her application for disability insurance
21  benefits ("DIB"), under Title II of the Social Security Act (the "Act").  This
22  Court has jurisdiction under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C.
23  § 636(c), the parties have consented to the jurisdiction of the undersigned United
24  States Magistrate Judge.  For the reasons stated below, the Commissioner's
25  decision is REVERSED and this action is REMANDED for further proceedings
26  consistent with this Order.
27  _____
28  [1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with
    respect to Plaintiff's medical records discussed in this Opinion and Order.

# I. BACKGROUND

Plaintiff filed an application for DIB on August 22, 2014, alleging disability beginning on January 26, 2013. Transcript ("Tr.") 262-63.[2] Plaintiff later requested a closed period of disability from January 26, 2013 to November 7, 2016. Tr. 412-13. Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on August 1, 2017, ALJ Janice E. Shave determined that Plaintiff was not disabled. Tr. 22-45. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on January 23, 2018. Tr. 1-8. This appeal followed.

# II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the

---

[2] A certified copy of the Administrative Record was filed on September 4, 2018. Electronic Case Filing Number ("ECF No.") 18. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

Court] may not engage in second-guessing.") (citation omitted).  A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."  Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted).  Finally, a court may not reverse an ALJ's decision if the error is harmless.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## III.    DISCUSSION

### A.    Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).  "If a claimant meets both requirements, he or she is 'disabled.'"  Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a).  Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps."  Tackett, 180 F.3d

at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

4

Step 5.  Is the claimant able to do any other work?  If not, then the claimant is "disabled" and therefore entitled to [DIB].  See 20 C.F.R. § 404.1520(f)(1).  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do.  There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB].  See 20 C.F.R. §§ 404.1520(f), 404.1562.   If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB].  See id.

Id. at 1098-99.

**B.    Summary Of ALJ's Findings**

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through June 30, 2018."  Tr. 24 (internal citation omitted).  The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since January 26, 2013, the alleged onset date (20 CFR 404.1571 et seq.)."  Tr. 25.  At step two, the ALJ found that

[Plaintiff] has the following severe impairments: status post slip and fall down an undetermined number of stairs at work on January 26, 2013, with a fracture of the right lateral fourth rib and reported injuries to the head, neck, shoulders, back, hips, and/or knees with minimal imaging study evidence to support those reports; minimal cervical spine degenerative disc disease with a history of cervical sprain; minimal degenerative changes and mild scoliosis in the thoracic spine with

subjective complaints of pain; disc narrowing at L5-S1 of the lumbosacral spine and/or a small disc herniation at that level with a history of lumbosacral sprain; bilateral knee sprain with imaging study findings suggesting osteochondritis dissecans involving the lateral tibial plateau of the left knee; tendinosis/partial bursal surface tear of the supraspinatus tendon with a small full-thickness component as well as moderate degenerative changes of the acromioclavicular joint with spurring indenting the musculotendinous junction of the supraspinatus of the right shoulder based on the most recent imaging study; a history of right shoulder sprain; a history of a chest contusion; mood disorder, not otherwise specified; major depressive disorder; and anxiety disorder (20 CFR 404.1520(c))."

Id.

At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Tr. 26. In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

perform light work as defined in 20 CFR 404.1567(b) except she is: never capable of climbing stairs, ladders, ropes, or scaffolds; occasionally capable of stooping, kneeling, crouching, crawling, and climbing ramps, but not prolonged kneeling, crouching, and crawling; is capable of frequent balancing at ground level and no hand-held assistive device needed; is not capable of driving for work or walking on uneven surfaces; is capable of occasional right-sided reaching above the shoulder; never capable of right-sided reaching overhead; must avoid concentrated exposure to extreme cold, excessive noise[,] unprotected heights and hazardous or moving machinery; is capable of occasional,

6

casual, brief, non-transactional interaction with the public, and occasional interaction with co-workers on a non-team basis; is able to understand, remember, and carry out simple instructions up to a specific vocational preparation (SVP) of 1 or 2; and her primary language is Spanish, but she is able to function at a basic functional level on a job site in English, so no complex written or verbal communication in English.

Tr. 27. The ALJ then found, at step four, that "[Plaintiff] is capable of performing past relevant work as a Filler. This work does not require the performance of work-related activities precluded by [Plaintiff's] [RFC] (20 CFR 404.1565)." Tr. 44. The ALJ, therefore, found that "[Plaintiff] has not been under a disability, as defined in the . . . Act, from January 26, 2013, through [August 1, 2017], the date of th[e] decision (20 CFR 404.1520(f))."[3] Tr. 45.

**C.** <u>**Issue Presented**</u>

In this appeal, Plaintiff raises only one issue, "[w]hether the ALJ properly considered the opinions of state agency physicians at initial and reconsideration level." ECF No. 27, Joint Stipulation at 5. Plaintiff argues that the ALJ erred by rejecting the opinions of state agency reviewing mental health doctors Aroon Suansilppongse, M.D., and Uwe Jacobs, Ph.D., that Plaintiff has the mental capacity for simple work, defined as 1-2 step tasks. <u>Id.</u> at 7. Plaintiff argues that the ALJ rejected specific portions of Drs. Suansilppongse's and Jacobs' opinions for a variety of reasons, none of which relate to her ability to perform only simple, one-to-two step tasks. <u>Id.</u>

Plaintiff argues that this error was material because "[t]he ALJ limited [her] to simple instructions at SVP 1 or 2, *not* simple one and two step instructions" and

---

[3] Earlier in the decision, the ALJ rejected Plaintiff's request for a closed disability period after noting that "[a] subsequent review of the thousands of pages of evidence compared to [Plaintiff's] hearing testimony presents too many inconsistencies to allow for a finding of a closed period of disability." Tr. 23.

"a limitation to one- and two-step instruction work is more restrictive than a limitation to simple instructions at SVP level 1 or 2." Id. (emphasis in original). Plaintiff adds that this "error is not harmless because the ALJ found that [she] can perform her [PRW] that is a reasoning level 2, which directly conflicts with a simple one and two step instruction limitation." Id. at 8.

Defendant argues that "the ALJ provided numerous reasons, supported by substantial evidence, for rejecting this overly restrictive aspect of the State agency reviewing psychiatrists' opinions." Id. at 9. Defendant adds that "[t]he ALJ detailed numerous instances where the treatment records, GAF scores, mental status examination findings from examining physicians did not support a limitation to 1-2 step tasks." Id. at 11 (citing Tr. 39, 42-44). Defendant, therefore, argues that "the ALJ's partial rejection of the opinions of the state agency reviewing psychiatrists is supported by substantial evidence and free from legal error." Id. at 12.

### 1. State Agency Doctors' Opinions

On November 17, 2014, Dr. Suansilppongse opined, in pertinent part, that Plaintiff was "moderately limited" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods." Tr. 105. Dr. Suansilppongse explained that Plaintiff's "test scores were influenced by her depressive reaction during the testing[,]" but she "is able to carry out simple instructions. Her anxiety and depressive reaction and alleged pain/headaches would interfere with her ability for sustained concentration and persistence or for task completion. However, [Plaintiff] would be able to complete tasks at an acceptable pace." Tr. 101, 105 (emphasis added). Dr. Suansilppongse added that Plaintiff "has mental capacity for simple work related activity (1-2 steps tasks) with minimal limitation due to alleged pain/headaches. . . . [Plaintiff's]

allegations are supported by [medical evidence of record ("MER")] and credible." Tr. 106.

On January 26, 2015, Dr. Jacobs found, in pertinent part, that Plaintiff's "anxiety and depressive reaction and alleged pain/headaches would interfere with her ability for sustained concentration and persistence or for task completion. However, [Plaintiff] would be able to complete tasks at an acceptable pace. Her anxiety and depressive reaction would occasionally interfere with her adaptability in a routine work setting." Tr. 115 (emphasis added). Dr. Jacobs added that Plaintiff "has mental capacity for simple, work related activity (1-2 steps tasks) with minimal limitations due to alleged pain/headaches. . . . [Plaintiff's] allegations are supported by MER and credible." Id. Dr. Jacobs noted that Dr. Suansilppongse found at the initial determination level that Plaintiff's "test scores were influenced by her depressive reaction during testing[,]" but noted that upon "[r]econsideration review, it is not clear that test scores were influenced by depression versus less than full effort and linguistic and educational factors and whether or not there is actually a severe mental [medically determinable impairment ("MDI")]. However, the [mental RFC ("MRFC")] remains reasonably supported and will be adopted." Tr. 116.

## 2. ALJ's Consideration Of State Agency Doctors' Options

The ALJ provided the following discussion regarding Drs. Suansilppongse's and Jacobs' findings:

> On November 17, 2014, Aroon Suansilppongse, M.D., the initial State Agency psychiatric consultant, opined [Plaintiff] was able to understand and remember and carry out simple instructions, would be able to complete tasks at an acceptable pace, had the ability to interact appropriately with supervisors, coworkers or the public without significant limitations, and had symptoms that would occasionally interfere with her adaptability in a routine work setting. Dr.

9

Suansilppongse concluded [Plaintiff] had the mental capacity for simple work-related activity (1-2 step tasks) with minimal limitation due to alleged pain and headaches [Tr. 104-06].  On January 26, 2015, Uwe Jacobs, Ph.D., the State Agency psychological consultant on reconsideration, essentially adopted Dr. Suansilppongse's opinion [Tr. 118-21].  I accord partial weight to these opinions.  As discussed above, the State agency psychiatric/psychological consultants raised the issue of [Plaintiff's] effort during the psychometric testing, but did not adequately address this issue.  The longitudinal record contains evidence of symptom exaggeration and contains too many inconsistencies to place much reliance on [Plaintiff's] subjective complaints, such as pain or headaches, and/or the results of effort-dependent testing.  The longitudinal record does not substantially support headaches as a medically determinable impairment, given the lack of a thorough medical workup or regular treatment specifically for headaches.  The State Agency consultants also gave their opinions using listings and some regulations that are now obsolete.

Tr. 42-43.

With respect to the ALJ's finding that Drs. Suansilppongse and Jacobs "questioned the validity of [Plaintiff's] test scores[,]" the ALJ observed that Dr. Suansilppongse noted that Plaintiff's "psychometric test score from the October 30, 2014, consultative examination were influenced by [Plaintiff's] depressive reaction during the testing."  Tr. 31-32 (citation omitted).  The ALJ added that Dr. Jacobs "however, noted [that] . . . 'it is not clear that test scores were influenced by depression versus less than full effort and linguistic and educational factors and whether or not there is actually a severe mental MDI . . . .'"  Tr. 32 (citing Tr. 116).

/ / /

/ / /

**D.  Standard To Review ALJ's Analysis Of Medical Opinions**

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted).  "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'"  Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

In cases where a treating source was not given controlling weight, non-treating, non-examining physicians may provide substantial evidence to support the ALJ's findings. Thomas, 278 F.3d at 957.  In determining how much weight to give medical opinions of non-treating physicians, the ALJ considers:

> (1) the extent of the medical examination; (2) how much the opinion is supported and explained by evidence in the record; (3) how consistent the medical opinion is with the record as a whole; (4) whether the opinion comes from a specialist; and (5) other factors that support or contradict the medical opinion.

McCollough v. Colvin, 2017 WL 2797079 at *11 (S.D. Cal. June 28, 2017) (citing 20 C.F.R. § 404.1527 (c)(1)-(6)).  The ALJ's must also consider the opinions of consulting state agency medical and psychological doctors in accordance with the standards above because "Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."  20 C.F.R. § 404.1513a(b)(1).

**E.  ALJ's Decision Is Not Supported By Substantial Evidence**

Here, the ALJ rejected Drs. Suansilppongse's and Jacobs' opinions that Plaintiff had the MRFC to perform 1-2 step tasks because: (1) the doctors questioned Plaintiff's effort during testing, but inadequately addressed this issue;

(2) Plaintiff's subjective complaints, such as pain and headaches, and the results of her effort-dependent testing were unreliable; (3) the record did not support the existence of Plaintiff's headaches; and (4) the doctors used listings and regulations that are obsolete. Tr. 42-43. The Court finds that these reasons were not supported by substantial evidence in the record.

Here, the ALJ's first three reasons for rejecting Drs. Suansilppongse's and Jacobs' opinions improperly rely on only some evidence in the record, while ignoring other evidence that appears to support the doctors' opinions. See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

For example, with respect to the ALJ's first reason for rejecting Drs. Suansilppongse's and Jacobs' opinions—that the doctors questioned Plaintiff's effort during testing, but inadequately addressed this issue—this finding ignores the doctors' conclusions that Plaintiff's "allegations are supported by MER and [were] credible." Tr. 106, 115. It also ignores the fact that Dr. Suansilppongse found that Plaintiff's "test scores were influenced by her depressive reaction during testing[,]" and that the ALJ found Plaintiff's major depressive disorder to be a severe impairment at step two of the sequential evaluation process. Tr. 25, 101. Thus, it is unclear how Plaintiff's depressive symptoms interfering with her ability to perform tests detracts from the doctors' findings, when the ALJ found Plaintiff's depression to be a severe impairment. Rather, it seems that a symptom that flows from a claimant's severe impairment and produces limitation in the claimant's ability to perform a task would support the claimant's claim for disability, as well as a doctor's opinion who found that the impairment produced such a limitation. Accordingly, the Court finds that the ALJ's first reason for rejecting the doctors' opinions was not supported by substantial evidence in the record.

With respect to the ALJ's second and third reasons for rejecting Drs. Suansilppongse's and Jacobs' opinions—that Plaintiff's headaches and subjective statements did not support the doctors' opinions—a close review of the doctors' opinions reveals that the doctors supported their findings by referencing more than just Plaintiff's headaches and subjective symptom statements. Instead, the record reveals that the doctors supported their opinions that Plaintiff was limited to simple 1-2 step tasks by noting Plaintiff's "anxiety and depressive reaction[,]" as well as Plaintiff's "alleged pain/headaches" earlier in their opinions. See Tr. 105, 115. Moreover, as discussed above, the ALJ found that Plaintiff's major depressive disorder and anxiety disorder were severe impairments at step two of the sequential evaluation process. Tr. 25. Accordingly, because the doctors supported their opinions by referencing Plaintiff's depression and anxiety, which the ALJ found were severe impairments, in addition to Plaintiff's alleged pain and headaches, and because the ALJ did not acknowledge this when analyzing the weight due to the doctors' opinions, the Court finds that the ALJ's second and third reason for rejecting the doctors' opinions was not supported by substantial evidence in the record. Holohan, 246 F.3d at 1207-08.

With respect to the ALJ's fourth reason for rejecting Drs. Suansilppongse's and Jacobs' opinions—that the doctors used listings and regulations that are obsolete—it is unclear how the doctors' use of unspecified obsolete listings and regulations detracts from their finding that Plaintiff can perform only simple 1-2 step tasks. Instead, for the reasons discussed above, the doctors' opinions that Plaintiff could perform only simple 1-2 step tasks appear to be well supported by the record. Accordingly, the Court finds that the ALJ's fourth reason for rejecting the doctors' opinions fails. On remand, the ALJ shall clarify this point.

Finally, the ALJ's erroneous rejection of the doctors' opinions that Plaintiff could perform only simple 1-2 step tasks was not harmless because a limitation to 1-2 step tasks, as Drs. Suansilppongse and Jacobs opined Plaintiff could perform, is

13

more restrictive than an ability to perform simple instructions at SVP levels 1 or 2, as the ALJ found Plaintiff had the RFC to perform. See Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1003 (9th Cir. 2015) ("[t]here [i]s an apparent conflict between [an] RFC, which limits [a plaintiff] to performing one- and two-step tasks, and the demands of Level Two reasoning, which requires a person to [a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.") (internal quotation marks omitted). Critically, Plaintiff's PRW as a Filler, which the ALJ found that Plaintiff could perform at step four, is characterized by the Dictionary of Occupational Titles ("DOT") at DOT 780.684-066 as SVP level two reasoning work. Tr. 45.

Accordingly, because Plaintiff's PRW as a Filler that the ALJ found Plaintiff could perform at step four exceeds the limitations endorsed by Drs. Suansilppongse and Jacobs, and because the ALJ erroneously rejected the doctors' opinions, the Court finds that the ALJ's decision that Plaintiff could perform her PRW at step four is not supported by substantial evidence.

## IV.    CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing.") (citation and internal quotation marks omitted).

IT IS SO ORDERED.

DATED:  July 12, 2019

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge

14